## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF KANSAS

DAVID SPURLOCK,

        **Petitioner,**

v.                                      **Case No.  07-3030-JWL**

L.E. BRUCE,  &
PAUL MORRISON,

        **Respondents.**

## MEMORANDUM & ORDER

On January 26, 2001, following a jury trial in the District Court of Harvey County, Kansas, Mr. Spurlock was convicted of one count of rape in violation of K.S.A. § 21-3502 and two counts of aggravated indecent liberties with a child in violation of K.S.A. § 3504(a)(3).  Mr. Spurlock ultimately was sentenced to 775 months imprisonment.  He brings this pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2554 (Doc. #1).  In his petition, Mr. Spurlock alleges that: (1) the trial court committed numerous errors; (2) his parole officer violated his rights under *Miranda*; (3) the cumulative effect of the multiple errors denied him his right to a fair trial; (4) his sentence is illegal under K.S.A. § 21-3511; and (5) he was denied effective assistance of counsel at the jury trial and subsequent K.S.A. § 60-1507 habeas proceedings. After thoroughly reviewing the parties' motions, briefs, and the underlying record, the court finds that the evidence clearly establishes Mr. Spurlock is entitled to no relief.  As such, his habeas application is denied.

## I.     Background

Mr. Spurlock's convictions stem from an investigation conducted in the spring of 2000 in Newton, Kansas.  Mr. Spurlock lived in Newton with his wife, Jolene.  Jolene's six year-old granddaughter, K.B., would frequently visit the Spurlocks' residence.  Mr. Spurlock was K.B.'s step-grandfather, but she referred to him as "Uncle David."   K.B.'s relatives, including her mother, L.B., began observing K.B. engage in strange behavior which caused L.B. to ask her whether anyone was touching her or doing things to her.  In response, K.B. started crying and said that Uncle David had been touching her when she went to her grandmother's house on her "private parts."   L.B. and her husband took K.B. to an emergency room, where K.B. was examined by a nurse and was interviewed by police officers.  The emergency room nurse testified that K.B. reported to her that Uncle David "has her touch him in the privates and then he also touches her in the privates."   K.B. was then taken to a rape crisis center in Wichita where she was examined by a sexual assault nurse examiner, who testified that K.B. told her that: "My Uncle David touches my front privates when I'm asleep.  He puts his finger in there.  He makes me touch him.  He has girls on his computer without their shirts or panties on.  He makes me look at that stuff."   No physical trauma was discovered as a result of that examination.

Subsequently, K.B. was interviewed three different times by Detective T. Walton.  During the first two interviews, she told him that Mr. Spurlock would touch her on her privates, that he had penetrated her private area with his finger,[1] that he would have her look at images of naked

---

[1]K.B. later denied that the penetration occurred.

women on the computer, that he would take his clothes off in the bathroom and rub a brush on his privates, that "milk" came out of his privates and would get on her, and that Mr. Spurlock had told her not to tell anyone.  The third interview was videotaped and Detective Walton had to use leading questions with K.B., who was reluctant to give detailed facts about the incidents.

At trial, Detective Walton testified about the contents of the first two interviews with K.B. and the third interview was played for the jury.  Further, K.B. testified via closed circuit television that Mr. Spurlock touched her on her privates, pushed on her privates with his finger until it hurt, used a brush on his privates in the computer room, made her touch him on his privates, and wiped "milk" that came out of his privates on her.

A clinical social worker, Jan Van Patten, testified that it was not uncommon for child victims of sexual abuse to report incidents and then later deny it when asked if it happened.  Ms. Van Patten, who had been present during the videotaped interview of K.B. by Detective Walton, testified that during that interview, K.B. would stare off from time to time, which Ms. Van Patten described as disassociating.  Ms. Van Patten further described disassociation as "going places in your head to avoid difficult or traumatic events."

Detective Walton was cross-examined about his interviews with Mr. Spurlock.  In response to one of defense counsel's questions, Detective Walton stated that Mr. Spurlock had invoked his right to legal counsel during his interview.  Outside the presence of the jury, defense counsel immediately moved for a mistrial, arguing that Mr. Spurlock's right to silence had been violated.  The trial court found that a violation had occurred, but overruled the mistrial motion, concluding it was "probably not a fatal error."  The trial court found that Detective Walton was

3

testifying in response to defense counsel's questions and offered a curative instruction, which Mr. Spurlock declined.

Lyn Harris, Mr. Spurlock's parole officer, also testified at trial.  She explained that she was supervising Mr. Spurlock while he was on parole from a prior conviction.  She further stated that she had a meeting with Mr. Spurlock in the spring of 2000 at which he indicated to her that he had been contacted by the police and that he acknowledged having unsupervised contact with a minor.  She explained that because of his parole, Mr. Spurlock was required to report to her whenever he had contact with a police officer and that he was not allowed to have unsupervised contact with minors as a condition of his parole.   In response to inquiry about the reason for that particular condition, Ms. Harris confirmed that Mr. Spurlock's prior conviction was a "sex case" involving children.  Following her testimony, defense counsel again moved for a mistrial, which the trial court denied, stating that the evidence of the prior conviction was admissible on the issue of plan and intent under K.S.A. § 40-655 and was admissible independent of § 40-655 as part of the background and circumstances of the case to explain the parole officer's testimony.  During jury instructions, an instruction was given stating that the evidence of the prior conviction was only admissible for the limited purposes of plan and intent.

Two computer experts employed with the Kansas Bureau of Investigation, David Klamm and Richard Marchewka, also testified regarding items found on Mr. Spurlock's computers, which were seized pursuant to a search warrant.  Their testimony at trial established that 592 images of naked women were located on Mr. Spurlock's computers

The jury convicted Mr. Spurlock of one count of rape and two counts of aggravated

4

indecent liberties with a child.  He was sentenced to a total of 775 months imprisonment.  Mr. Spurlock appealed his conviction to the Kansas Court of Appeals (KCA), arguing that the trial court abused its discretion by admitting evidence of his prior conviction, admitting the testimony of the social worker, overruling his motion for mistrial regarding Detective Walton's testimony about Mr. Spurlock's invocation of his right to counsel, and allowing K.B. to testify via closed circuit television.  The KCA affirmed Mr. Spurlock's convictions in August of 2002, *State v. Spurlock*, 30 Kan. App. 2d 921, 52 P.3d 371 (2002), and the Kansas Supreme Court denied review in November of 2002.

In September of 2003, Mr. Spurlock filed a motion in the District Court of Harvey County for post-conviction relief pursuant to K.S.A. § 60-1507, alleging ineffective assistance of counsel, cumulative error, a violation of his *Miranda* rights, and illegal charges and sentences. The district court denied relief and Mr. Spurlock appealed to the KCA, alleging that the district court erred in finding trial counsel was not deficient and in failing to inquire sufficiently into his request for new counsel.  The KCA affirmed the denial of Mr. Spurlock's § 60-1507 motion and the Kansas Supreme Court denied review.

On February 6, 2007, Mr. Spurlock filed the § 2254 motion that is currently before the court.  In his motion, Mr. Spurlock alleges that: (1) the trial court erred in admitting evidence of his prior sex conviction; (2) the trial court erred in admitting the social worker's testimony; (3) the trial court erred in failing to grant his mistrial motion regarding Detective Walton's testimony that Mr. Spurlock invoked his right to counsel; (4) the trial court erred in allowing K.B. to testify via closed circuit television; (5) the parole officer violated Mr. Spurlock's

*Miranda* rights; (6) the cumulative effect of multiple errors denied Mr. Spurlock his right to a fair trial; (7) his sentence fails to comply with K.S.A. § 21-3511; and (8) that he was denied effective assistance of counsel at his jury trial and subsequent § 60-1507 proceedings.

## II.    Legal Standard

Because Mr. Spurlock filed his habeas petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), the provisions of the AEDPA govern this case. *Jackson v. Ray*, 390 F.3d 1254, 1259 (10th Cir. 2004). The AEDPA "circumscribes a federal habeas court's review of a state-court decision." *Anderson v. Mullin*, 327 F.3d 1148, 1152 (10th Cir. 2003) (quotations omitted). This court cannot grant federal habeas relief unless the state court's adjudication of the claims either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See Williams v. Taylor*, 529 U.S. 362, 404-05 (2000) (citing 28 U.S.C. § 2254(d)).

The Supreme Court has determined that the "contrary to" and "unreasonable application" clauses of 28 U.S.C. § 2254(d)(1) have independent meanings. *Bell v. Cone*, 535 U.S. 685, 694 (2002). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 412-13. A state court's failure to cite the proper Supreme Court precedent does not dictate that the state court's decision is contrary

to clearly established federal law; in fact, "the state court need not even be aware of our precedents; 'so long as neither the reasoning nor the result of the state-court decisions contradicts them.'" *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003). "Under the 'unreasonable application' clause, . . . the relevant inquiry is not whether the state court's application of federal law was incorrect, but whether it was 'objectively unreasonable.'" *Anderson*, 327 F.3d at 1153 (citing *Williams*, 529 U.S. at 409); *see also Wiggins v. Smith*, 539 U .S. 510, 520 (2003)(same). Legal principles are "clearly established" for purposes of AEDPA review when the holdings of Supreme Court decisions as of the time of the relevant state-court decision establish those principles. *See Yarborough v. Alvarado*, 541 U.S. 652, 661 (2004).

The AEDPA also substantially restricts the scope of federal habeas review of state court findings of fact. This court must presume "that factual determinations made by the state court are correct, and the petitioner bears the burden of rebutting this presumption with clear and convincing evidence." *Martinez v. Zavaras*, 330 F.3d 1259, 1262 (10th Cir. 2003)(citing § 2254(e)(1)); *see also Fields v. Gibson*, 277 F.3d 1203, 1221 (10th Cir. 2002)). "This presumption does not extend to legal determinations or to mixed questions of law and fact." *Id.* (citing *Herrera v. Lemaster*, 225 F.3d 1176, 1178-79 (10th Cir. 2000)). "That is, the 'deferential standard of review does not apply if the state court employed the wrong legal standard in deciding the merits of the federal issue.'" *Id.* (quoting *Cargle v. Mullin*, 317 F.3d 1196, 1202 (10th Cir. 2003)). "Ultimately, . . . review of the state court's proceedings is quite limited, as section 2254(d) sets forth a highly deferential standard for evaluating state-court rulings." *Anderson*, 327 F.3d at 1152.

## III.    Analysis

The court has determined that an evidentiary hearing is not appropriate in this case because Mr. Spurlock has failed to show that "his allegations, if true and not contravened by the existing factual record, would entitle him to habeas relief."  *Anderson v. Attorney General of Kan.*, 425 F.3d 853, 858 (10th Cir. 2005).  As explained below, the record, briefs, and pleadings clearly establish that Mr. Spurlock is not entitled to federal habeas corpus relief.

*A.     Trial Court Errors*

1.     Admission of evidence of prior conviction

Mr. Spurlock first argues that the trial court erred in admitting evidence of his previous conviction for a sex offense via Ms. Harris' testimony.  Essentially, Mr. Spurlock argues that because the state district court misapplied its own evidentiary rules by admitting this evidence, he did not receive a fair trial.  On appeal, the KCA rejected Mr. Spurlock's argument that the admission of the prior conviction violated Kansas law.   Although the KCA agreed that the trial court erred in admitting the previous conviction to show intent or plan under K.S.A. § 60-455, it determined that the conviction was admissible independent of § 60-455 under *State v. Edwards*, 264 Kan. 177, 955 P.2d 1276 (1998).  *Spurlock*, 30 Kan. App. 2d at 929, 52 P.3d 371. The KCA held that the previous conviction was relevant to explain the parole officer's relationship with Mr. Spurlock, the reason for the specific conditions of parole, and the significance of Mr. Spurlock's statements to the parole officer, and thus its admission did not violate Kansas law.  *Id*. at 929-30.  The KCA further held that the trial court appropriately balanced the probative value of the evidence against the potential prejudice to Mr. Spurlock by

8

excluding details of the prior crime. *Id*. at 930.[2]

This claim raises a state evidentiary question, which cannot serve as the basis for habeas corpus relief unless the state court's ruling rendered Mr. Spurlock's trial fundamentally unfair and thus resulted in a violation of due process. *Duckett v. Mullin*, 306 F.3d 982, 999 (10th Cir. 2002). In other words, "[u]nder Tenth Circuit precedent, Mr. [Spurlock] may only obtain habeas relief for an improper state evidentiary ruling 'if the alleged error was so grossly prejudicial [that it] fatally infected the trial and denied the fundamental fairness that is the essence of due process.'" *Bullock v. Carver*, 297 F.3d 1036, (10th Cir. 2002)(quoting *Revilla v. Gibson*, 283 F.3d 1203, 1212 (10th Cir. 2002))(further citation omitted).

Although it does not apply in this case, the court finds that Federal Rule of Evidence 414(a) is indicative of the type of evidence "federal courts believe to be within the permissible realm of fundamental fairness in child molestation cases." *Scott v. Dorsey*, 134 F.3d 383, 1998 WL 43157, at * 5 n.6 (10th Cir. 1998). *See also Pratt v. Sirmons*, 2006 WL 3064103, at * 4 (W.D. Okla. 2006)(same). That rule provides:

> In a criminal case in which the defendant is accused of an offense of child molestation, evidence of the defendant's commission of another offense or offenses of child molestation is admissible, and may be considered for its bearing on any matter to which it is relevant.

---

[2]In making this determination, the KCA applied only state evidentiary rules. *Spurlock*, 30 Kan. App. 2d at 929, 52 P.3d 371. Nevertheless, the AEDPA's deferential standard of review still applies, because neither the reasoning nor the result of the KCA's decision contradicts Supreme Court precedent. *See Parker v. Scott*, 394 F.3d 1302, 1218-19 (10th Cir. 2005).

Fed. R. Evid. 414(a).  In holding that this rule does not violate the constitutional guarantee of due process, the Tenth Circuit noted that Rule 403, which requires balancing the probative value against the prejudicial effect of such evidence, eliminates any due process concerns posed by Rule 414.  *United States v. Castillo*, 140 F.3d 874, 883 (10th Cir. 1998).  Thus, Mr. Spurlock's prior conviction would have been admissible in federal court under Rule 414 absent a showing that its prejudicial effect substantially outweighed its probative value in violation of Rule 403.

Both the district court and the KCA engaged in the requisite balancing of the probative value and prejudicial effect of Mr. Spurlock's prior conviction, and the court finds that those conclusions were not contrary to nor an unreasonable application of federal law; thus, the court finds that the admission of the evidence did not render Mr. Spurlock's trial fundamentally unfair. In this case, the evidence was relevant to explain the facts surrounding Ms. Harris' testimony and her relationship with Mr. Spurlock.  The evidence was also relevant to explain the significance of Mr. Spurlock's admissions to Ms. Harris regarding his unsupervised contact with a minor and the specific conditions of his parole.  Moreover, the details of the previous conviction were excluded, which substantially limited the prejudice to Mr. Spurlock.

Perhaps most notable, however, is that the evidence of the prior conviction was clearly not the only evidence from which a jury could have convicted Mr. Spurlock; thus, the court cannot say that admission of the prior conviction rendered Mr. Spurlock's trial fundamentally unfair.  *See, e.g.*, *Smallwood v. Gibson*, 191 F.3d 1257, 1275 (10th Cir. 1999)(holding that admission of photographs was not "so unduly prejudicial as to render the proceedings against petitioner fundamentally unfair" given the probative nature of the photos and the "wealth of

10

additional evidence supporting defendant's convictions). Although K.B.'s testimony may have been inconsistent at times, as relayed at trial by Detective Walton, the sexual assault nurse examiner, and K.B. herself, it was consistent on several key aspects demonstrating Mr. Spurlock's culpability, such as that he touched her privates, used a brush on his privates, and that "milk" came out of his privates.   Furthermore, the court finds that the discovery of the pornographic images on Mr. Spurlock's computer further corroborated K.B.'s testimony that he made her look at pictures of naked women.   Thus, in light of the other evidence against Mr. Spurlock presented at trial, the court finds that the prejudicial effect of the prior conviction did not substantially outweigh the probative value.   Accordingly, because the court finds that the admission of the evidence was not so prejudicial to render Mr. Spurlock's trial fundamentally unfair, Mr. Spurlock has failed to demonstrate a violation of his constitutional right to due process and he is not entitled to federal habeas relief on this issue. *See id*.

2.      Admission of evidence of social worker's testimony

Mr. Spurlock also argues that the trial court erred in admitting the testimony of the social worker, Ms. Van Patten, because it constituted improper vouching for K.B.'s testimony.   Mr. Spurlock complains of the statements made by Ms. Van Patten in which she explained K.B.'s reluctance to testify during the videotaped interview with Detective Walton as "disassociation." She further testified that child victims of sex abuse commonly disassociate.

In his argument on this issue, which is identical to that presented to the KCA, Mr. Spurlock cites to two Kansas cases: *State v. Jackson*, 239 Kan. 463, 721 P.3d 232 (1986) and

11

*State v. Mullins*, 267 Kan. 84, 977 P.2d 931 (1999).  In *Jackson*, the Kansas Supreme Court held that the trial court committed prejudicial error warranting reversal by permitting two social workers to testify that, in their opinions, the child was telling the truth and that the defendant had committed the acts of molestation.  *Jackson*, 239 Kan. at 470, 977 P.2d 232.  In *Mullins*, the Kansas Supreme Court held that it was harmless error for the trial court to allow a witness to answer a question asking whether it appeared that the young victim had been coached.  *Mullins*, 267 Kan. at 97, 977 P.2d 931.

Mr. Spurlock raised this argument on direct appeal of his conviction.  Relying on Kansas case law governing the admission of expert witness testimony, the KCA held that the district court did not abuse its discretion in admitting Ms. Van Patten's testimony because Ms. Van Patten did not state she believed K.B. was sexually abused by Mr. Spurlock, nor did she offer an opinion that K.B. was telling the truth.  *Spurlock*, 20 Kan. App. 2d at 932, 52 P.3d at 379.  Rather, Ms. Van Patten merely offered an explanation of K.B.'s behavior during the taped interview.  *Id*.  The KCA determined that because the jury was able to personally observe K.B.'s testimony through closed-circuit television, the jury was free to make their own decisions regarding her credibility.  *Id*.  Therefore, the KCA found the facts in *Jackson* and *Mullins* were factually distinguishable and concluded that Ms. Van Patten's testimony was not an impermissible comment on K.B.'s credibility.  *Id*.

Although this allegation involves a state evidentiary question, the issue before the court is not whether the KCA violated state law, but whether the state court's ruling rendered Mr. Spurlock's trial fundamentally unfair.  *Duckett*, 306 F.3d at 999.  The Tenth Circuit has set forth

12

the following standard to be applied when determining whether challenged vouching testimony violates the general constitutional due process standard:

> As applied to a criminal trial, denial of due process is the failure to observe that fundamental fairness essential to the very concept of justice.  In order to declare a denial of it we must find that the absence of that fairness fatally infected the trial; the acts complained of must be of such quality as necessarily prevents a fair trial.

*Parker v. Scott*, 394 F.3d 1302, 1310-11 (citing *Lisenba v. California*, 314 U.S. 219, 236 (1941))(further citations omitted).  "Thus, in considering [Mr. Spurlock's] vouching allegations, [the relevant inquiry] is whether the [KCA] unreasonably applied the due process principles of *Lisenba* and subsequent Supreme Court case law to the current case."  *Id*. at 1311.

*Parker* involved a federal habeas petition in which the petitioner alleged that his due process rights were violated because a doctor was permitted to provide testimony at trial which impermissibly vouched for the child victim's credibility.  *Id*. at 1309.  The doctor gave expert testimony[3] that the victim's behavior was consistent with a child who had been sexually abused and ultimately opined that the child had been sexually abused.  *Id*. at 1311-12.  In evaluating whether this constituted impermissible vouching, the Tenth Circuit concluded that it did not violate due process standards.  *Id*. at 1312.  In reaching this conclusion, the Tenth Circuit noted that the doctor did not opine that the *petitioner* had committed sexual abuse, nor did she provide

---

[3]The Kansas Court of Appeals evaluated Ms. Van Patten's testimony under expert witness standards and Mr. Spurlock does not dispute that characterization in his petition.  *Spurlock*, 30 Kan. App. 2d at 931-32.

opinion testimony about the child's credibility. *Id*. Further, the Circuit stated that "experts may testify about symptoms consistent with sexual abuse without improperly vouching for the witness's credibility." *Id*.

In this case, as noted by the KCA and similar to *Parker*, Ms. Van Patten did not provide an ultimate opinion that K.B. was telling the truth, nor did she give an ultimate opinion that K.B. had been sexually abused by Mr. Spurlock. She merely provided testimony offering an explanation for K.B.'s behavior during the videotaped interview, explaining that such behavior was consistent with disassociation, which she stated was not uncommon in child victims of sex abuse. In other words, she testified that K.B. exhibited "symptoms consistent with sexual abuse" which did not result in improper vouching for K.B.'s credibility. *See id*. Thus, the court finds that Ms. Van Patten's testimony did not impermissibly vouch for K.B. because it "was not so egregious that it 'fatally infected' or 'necesssarily prevent[ed]' a fair trial." *Id*. at 1311. Therefore, the KCA's resolution of this issue was not an unreasonable application of Supreme Court law and Mr. Spurlock is not entitled to habeas relief on this issue. *Id*.

3.      Testimony regarding Mr. Spurlock's invocation of his right to counsel

Mr. Spurlock argues that the trial court erred in denying his motion for a mistrial after Detective Walton testified that Mr. Spurlock had invoked his right to counsel during his interview. The Supreme Court has held that introducing a defendant's post-*Miranda* silence at trial violates due process principles. *Doyle v. Ohio*, 426 U.S. 610, 618-20 (1976). "This rule is based upon a recognition that it is fundamentally unfair for the government to inform a defendant of his right to remain silent and then ask at trial that a negative inference be drawn from that

silence." *Earnest v. Dorsey*, 87 F.3d 1123, 1135 (10th Cir. 1996)(citing *United States v. Canterbury*, 985 F.2d 483, 486 (10th Cir. 1993)).

On federal habeas review, the court must determine whether the *Doyle* error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 622 (1993)(quoting *Kotteakos v. United States*, 328 U.S. 750, 766 (1946)). The Supreme Court has recently instructed that this standard applies regardless of "whether or not the state appellate court recognized the error and reviewed it for harmlessness . . . ." *Fry v. Pliler*, --- S. Ct. ---, 2007 WL 1661463, at *6  (June 11, 2007).  If the court is in "grave doubt" about the likely effect of the error on the jury's verdict such that "the matter is so evenly balanced that [the court] feels [itself] in virtual equipoise as to the harmlessness of the error," it must treat the error as if it had a "substantial or injurious effect." *O'Neal v. McAninch*, 513 U.S. 432, 435 (1995). *See also Turrentine v. Mullin*, 390 F.3d 1181, 1189 (10th Cir. 2004)(discussing the *Brecht* and *O'Neal* standards).

Here, Detective Walton's statement that Mr. Spurlock requested legal counsel during his interview does not put the court in "grave doubt" about the likely effect of the error on the jury's verdict.  Except for the brief mention by Detective Walton, which was made in response to a question from defense counsel, no reference was made to Mr. Spurlock's invocation of his right to counsel at any other time during the trial.  In fact, defense counsel specifically declined a curative instruction, presumably to avoid further drawing the jury's attention to the evidence. Moreover, as indicated above, there was ample evidence at this trial from which a jury could convict Mr. Spurlock, independent of any reference to his invoking the right to counsel.  Thus,

the court concludes that the error in this case did not have a substantial or injurious effect on the jury's verdict.  *See Earnest v. Dorsey*, 87 F.3d 1123, 1135 n.9 (10th Cir. 1996)(stating that references to defendant's silence did not have substantial and injurious effect where prosecution did not refer again to the silence, there was other evidence against defendant, and allusion to defendant's silence was minimal).  Accordingly, Mr. Spurlock is not entitled to federal habeas relief on this issue.

4.      K.B.'s testimony via closed circuit television

Mr. Spurlock argues that the trial court violated his Sixth Amendment Confrontation Clause right by allowing K.B. to testify via closed circuit television.  Specifically, Mr. Spurlock alleges that the trial court failed to make the requisite finding that K.B. would be so traumatized by testifying live that she would be unable to communicate.

The standards by which a child witness can constitutionally testify against a defendant at trial in the absence of face-to-face confrontation with the defendant were set forth in *Maryland v. Craig*, 497 U.S. 836 (1990).  After *Craig*, "a trial court must find that testifying in front of the defendant will cause the child defendant emotional trauma, and that the trauma must impair the child's ability to communicate."  *Thomas v. Gunter*, 962 F.2d 1477, 1482 (1992).[4]  The trial court must make a case specific finding that: (1) the use of the closed circuit television procedure is necessary to protect the welfare of the testifying child witness; (2) the child witness would be

_____

[4]Furthermore, *Craig* requires that the testimony must be "functionally equivalent to live, in-court testimony and must be subject to rigorous adversarial testing."  *Thomas*, 962 F.2d at 1482 (citing *Craig*, 497 U.S. at 850).  Because Mr. Spurlock does not raise an argument with respect to this issue, however, the court need not address it.

16

traumatized, not by the courtroom generally, but by the presence of the defendant; and (3) that the emotional distress suffered by the child witness is more than *de minimis*, that is, more than mere nervousness, excitement, or some reluctance to testify. *Craig*, 497 U.S. at 855-56 (citations omitted).

The KCA addressed this argument and concluded that the trial court did not err in allowing K.B. to testify through closed-circuit television. *Spurlock*, 30 Kan. App. 2d at 935-36, 52 P.3d 371. In so holding, it found that the trial court had appropriately determined that Ms. Van Patten was qualified to give an opinion regarding K.B.'s potential emotional distress associated with testifying in open court. *Id*. The KCA noted Ms. Van Patten's testimony that K.B. would "shut down" in a courtroom setting where Spurlock was present. *Id*. Further, the KCA found that the trial court concluded there would be a "much higher degree of traumatization" if K.B. had to testify in the courtroom and that the open court setting would have "a good chance of preventing her from communicating reasonably with the counsel and with the jury." *Id*.

Ultimately, the KCA concluded that, although the trial court had not used the precise language in § 22-3434, it had "stated the particularized findings of trauma sufficient to satisfy the standard." *Spurlock*, 30 Kan. App. 2d at 935-56, 52 P.3d 371. In making this determination, the KCA relied upon K.S.A. § 22-3434 and *State v. Chisholm*, 250 Kan. 153, 825 P.2d 147.[5]

---

[5] § 22-3434 provides that a child victim may testify via closed-circuit television provided that the trial court makes individualized findings that "to require the child . . . to testify in open court will so traumatize the child as to prevent the child from reasonably communicating to the jury or render the child unavailable to testify." K.S.A. § 22-3434. *Chisholm* states that a defendant's constitutional right to confrontation is not denied when the child testifies via closed circuit television

These standards utilized by the KCA in examining this issue are virtually identical to those set forth in *Craig*. *Compare Craig*, 497 U.S. at 855-56 *with Chisolm*, 250 Kan. at 166, 825 P.2d 147. Accordingly, the court concludes that the KCA applied the appropriate standard because the Kansas standard "mirrors" the *Craig* standard. *See Upchurch v. Bruce*, 333 F.3d 1158, 1164 n.4 (10th Cir. 2003). Furthermore, the KCA's determination that the trial court did not err in finding that K.B. could testify via closed circuit television because she would be traumatized and have difficulty communicating in an open court setting where Mr. Spurlock was present was not contrary to nor an unreasonable application of federal constitutional law.[6] *See Thomas*, 962 F.2d at 1482 (holding that the trial court made the appropriate findings under *Craig* where it found the child victims would be unable to testify and would be traumatized by seeing the appellant)(pre-AEDPA). Moreover, Mr. Spurlock has not presented clear and convincing evidence to rebut the factual findings of the Kansas state courts regarding K.B.'s ability to testify in open court. His argument that the court only relied on the testimony of one social worker is unpersuasive where he failed to rebut Ms. Van Patten's testimony and the Kansas courts deemed it credible. *See Lomholt v. Iowa*, 327 F.3d 748, 754 (8th Cir. 2003). Thus, the court finds that

pursuant to § 22-3434 provided that the trial court: (1) hears evidence and determines the procedure is necessary to protect the welfare of the testifying child; (2) finds the child would be traumatized by the presence of the defendant; and (3) finds the emotional distress suffered by the child in the presence of the defendant is more than de minimis, that is, more than mere nervousness, excitement, or some reluctance to testify. *Chisholm*, 250 Kan. at 166, 825 P.2d 147.

[6]Because the KCA recognized that Mr. Spurlock was presenting a Sixth Amendment argument on this issue, *Spurlock*, 30 Kan. App. 2d at 934, 52 P.3d 371, the court considers the issue to have been adjudicated on the merits for AEDPA purposes. *See Morris v. Burnett*, 319 F.3d 1254, 1267 (10th Cir. 2003)(holding that AEDPA deferential standard applies where court of appeals' opinion expressly addresses petitioner's constitutional claim).

18

Mr. Spurlock is not entitled to habeas relief on this issue.

B.     *Parole Officer & Cumulative Effect of Errors*

Mr. Spurlock argues that Ms. Harris violated his *Miranda* rights by engaging in a "fishing expedition" for the police by attempting to elicit incriminating evidence from him.  Mr. Spurlock also argues that the cumulative effect of the trial court errors denied him his right to a fair trial. Mr. Spurlock did not raise these two issues on direct appeal.  He did, however,  raise them in his § 60-1507 motion, but failed to appeal the trial court's denial of those issues to the KCA.

"Except for a few narrow exceptions, § 2254 habeas petitioners must exhaust available state court remedies before seeking habeas relief."  *Cannon v. Gibson*, 259 F.3d 1253, 1265 (10th Cir. 2001)(citing § 2254(b)(1)).  To satisfy this requirement, an applicant "'must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.'"  *Bloom v. McKune* 130 F. App'x 229, 232 (10th Cir. 2005)(quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)).

Because  Mr. Spurlock failed to present his claim to the KCA, he has failed to exhaust his available state court remedies.  *See Butler v. State of Kansas*, 57 F. App'x 781, 782-83 (10th Cir. 2002)(holding that petitioner must present the issues raised in the federal habeas action to the highest Kansas court to satisfy the exhaustion requirement); *Thomas v. Gibson*, 218 F.3d 1213, 1221 (10th Cir. 2000)("Because Thomas has never presented to the OCCA [his ineffective assistance claim], that claim is technically unexhausted.").  *See also Donaghey v. Bruce*, 173 F. Supp. 2d 1147, 1152 (D. Kan. 2001)(holding that claims raised in initial 60-1507 motion but not presented to the KCA constituted unexhausted claims).  The Supreme Court has held that if a

19

petitioner "failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred" the claims are considered exhausted and procedurally defaulted for purposes of federal habeas relief. *Thomas*, 218 F.3d at 1221 (10th Cir. 2000) (quoting *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)).

Although Kansas does not absolutely prohibit second or successive petitions for post-conviction relief, K.S.A. § 60-1507(c) provides that "[t]he sentencing court shall not be required to entertain a second or successive motion for similar relief on behalf of the same prisoner." *See Woodberry v. State*, 33 Kan. App. 2d 171, 174, 101 P.3d 727 (2004)  Thus, these claims are procedurally defaulted because Mr. Spurlock failed to exhaust them in the state system and a return to that system would result in a finding that the claims are procedurally barred pursuant to § 60-1507(c). *See Wimbley v. Werholtz*, 2005 WL 1593679, at *7 (D. Kan. July 7, 2005); *see also Thomas*, 218 F.3d at 1221.  Kansas law has suggested that "exceptional circumstances" may warrant successive motions. *Brooks v. State*, 25 Kan. App. 2d 466, 467, 966 P.2d 686, 688 (1998).  "Exceptional circumstances," however, are quite narrowly defined as "'those unusual events or intervening changes in the law which prevented the movant from being aware of and raising all of his alleged trial errors in his first post-conviction proceeding, and they must be such that the ends of justice can only be served by reaching the merits of the subsequent application.'" *Butler*, 57 F. App'x at 783 (quoting *Brooks*, 25 Kan. App. 2d at 467, 966 P.2d 686).  Because Mr. Spurlock has alleged no such "exceptional circumstances" in this case,  the court finds he cannot now exhaust these claims via a successive § 60-1507 motion.

20

*See id*.

For the court to consider the merits of these procedurally defaulted claims, Mr. Spurlock must demonstrate either "cause and prejudice" or "manifest injustice."[7] *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). To demonstrate cause for the default, Mr. Spurlock must show that an objective, external impediment prevented him from raising the claim. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). The "cause" offered by Mr. Spurlock for the failure to appeal is that his § 60-1507 counsel was ineffective. Mr. Spurlock was not entitled, however, to assistance of counsel in his state post-conviction proceedings. *Coleman*, 501 U.S. at 752. Thus, any failure to assist by his post-conviction counsel "would therefore not amount to a violation of constitutional magnitude and, as such, cannot provide the cause necessary to excuse petitioner's procedural default." *Parkhurst v. Shillinger*, 128 F.3d 1366, 1371 (10th Cir. 1997). *See also*, *Coleman*, 501 U.S. at 752-53 (holding that attorney's error in filing state habeas appeal cannot be constitutionally ineffective and that petitioner must "bear the risk of attorney error that results in a procedural default"). Accordingly, because the court finds that Mr. Spurlock has failed to demonstrate cause for the default, it will not address the merits of these claims and Mr. Spurlock

---

[7]In fact, Mr. Spurlock appears to concede that these claims are procedurally barred and he refers only to the "cause and prejudice" standard in his briefings. To the extent his briefings could be construed as alleging manifest injustice, the court rejects any such argument because he has not supplemented his claim with any assertions of actual innocence. *Beavers v. Saffle*, 216 F.3d 918, 923 (10th Cir. 2000)("To meet [the fundamental miscarriage of justice test], a criminal defendant must make a colorable showing of factual innocence.")(citing *Herrera v. Collins*, 506 U.S. 390, 404 (1993).

is not entitled to federal habeas relief on these claims.[8]

C.    *Illegal Sentence*

Mr. Spurlock argues that his sentence does not comport with K.S.A. § 21-3511.  The court need not consider this claim, however, because review under § 2254 is limited to "violation[s] of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Accordingly, because Mr. Spurlock only argues that his sentence violates Kansas law, the court lacks jurisdiction on this issue.  *Bloom v. McKune*, 130 F. App'x 229, 231 (10th Cir. 2005).

D.    *Ineffective Assistance of Counsel*

Mr. Spurlock's ineffective assistance of counsel claim alleges that he was denied effective counsel during the jury trial and at the subsequent § 60-1507 habeas proceedings.  The court again reiterates that Mr. Spurlock does not have a constitutional right to counsel at the post-conviction stage.  *Coleman*, 501 U.S. at 752.  Thus, he is not entitled to federal habeas review with respect to his allegations concerning his § 60-1507 counsel.  *Smallwood v. Gibson*, 191 F.3d 1257, 1267 n.4 (10th Cir. 1999)(citing *Coleman*, 501 U.S. at 752).  Therefore, the court need only address Mr. Spurlock's ineffective assistance argument with respect to his trial counsel.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel.  Under *Strickland*, Mr. Spurlock must first demonstrate that his counsel's performance "fell below an

---

[8]Because Mr. Spurlock has failed to show "cause," the court need not address whether he has shown prejudice.  *See Klein v. Neal*, 45 F.3d 1395, 1400 (10th Cir. 1995)("The 'cause and prejudice' exception is conjunctive, requiring proof of both cause and prejudice.").

objective standard of reasonableness." *Id*. at 688.  "In applying this test, we give considerable deference to an attorney's strategic decisions and 'recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Bullock v. Carver*, 297 F.3d 1036, 1044 (10th Cir. 2002) (quoting *Strickland*, 466 U.S. at 690).

Second, Mr. Spurlock "must show that counsel's deficient performance prejudiced the defense . . . ." *Le v. Mullin*, 311 F.3d 1002, 1024-25 (10th Cir. 2002).  Under this prong, Mr. Spurlock must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 1025 (quoting *Strickland*, 466 U.S. at 694).  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Bullock*, 297 F.3d at 1044.  The court "may address the performance and prejudice components in any order, but need not address both if [Mr. Spurlock] fails to make a sufficient showing of one." *Cooks v. Ward*, 165 F.3d 1283, 1292-93 (10th Cir. 1998).  In sum, Mr. Spurlock bears the burden to expose "'the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment.'"  *Anderson v. Attorney General of Kan.*, 425 F.3d 853, 859 (10th Cir. 2005) (quoting *Strickland*, 466 U.S. at 690).

Mr. Spurlock argues that his trial counsel, Kevin Loeffler failed to properly question and investigate witnesses and failed to object to the testimony of the KBI computer experts. The gist of Mr. Spurlock's first argument is that, had Mr. Loeffler properly interviewed the witnesses, he would have discovered that K.B. had a troubled home life that may have explained her

23

strange behavior.  The state district court conducted a hearing regarding this argument and concluded that Mr. Loeffler did not provide ineffective assistance, nor did Mr. Spurlock make an adequate showing of prejudice.  At the hearing, Mr. Loeffler testified that at the time of Mr. Spurlock's trial, he had been practicing law for approximately 11 years and that the bulk of his practice consisted of criminal work.  In response to the inquiry of why he didn't investigate the victim's home life, he stated that he didn't think that was a "big issue" in the case.  He stated that he believed the only way to substantiate any problems with K.B.'s home life would have been to put Mr. Spurlock on the stand, which he determined was not an appropriate trial strategy.  He also testified that he didn't think that hiring an investigator in this particular case would have made a difference.  He further testified that he did not interview the victim's mother because he knew she was not likely to talk to him.

Based on the evidence presented at the hearing, the district court concluded that Mr. Loeffler had made contact with those witnesses who had direct knowledge and had performed the appropriate interviews.  The district court specifically stated: "I can not recall a trial where there was more of a full court press put on by defense counsel . . . [Mr. Loeffler] was aggressive in his questioning of witnesses, aggressive in his pursuit of the defendant's interest in the courtroom, filed a plethora of pretrial motions, [and] was a vigorous and aggressive defense attorney in all respects."  The district court further determined that Mr. Loeffler did everything he could to adequately prepare for trial and that Mr. Loeffler properly objected throughout the trial.  The district court also found that Mr. Loeffler thoroughly questioned the witnesses at trial, including the alleged victim.  Ultimately, the district court concluded that Mr. Loeffler's

assistance was not deficient and that he did the best he could in light of the State's "rather . . . compelling evidence." Moreover, the district court concluded that, even assuming Mr. Loeffler's performance was deficient, there had not been a showing that but for that deficiency there would have been a different outcome at trial.  In addressing this argument on appeal, the KCA concluded that the district court did not err in finding that Mr. Spurlock had failed to prove that Mr. Loeffler's performance at trial was ineffective under the Sixth Amendment.[9]  *Spurlock v. State*, 138 P.3d 418 (Table), 2006 WL 2043032 (Kan. App. July 21, 2006).

Mr. Spurlock has failed to show that Mr. Loeffler's strategic decisions in this trial fell below an "objective standard of reasonableness" as required by *Strickland*.  In fact, the district court specifically found that Mr. Loeffler had in fact conducted the necessary interviews.  Based on a thorough examination of the trial transcript and the ineffective assistance hearing transcript, the court determines that the district court's conclusion that Mr. Spurlock did not receive ineffective assistance of counsel was not unreasonable.

Moreover, the court finds that Mr. Spurlock cannot satisfy the prejudice prong of the *Strickland* test because he has failed to point to specific *exculpatory* evidence that would have been uncovered had Mr. Loeffler more thoroughly investigated K.B.'s home life.  *See United States v. Manriquez-Rodriguez*, 182 F.3d 934, 1999 WL 345505, at *5 (10th Cir. 1999)("To

---

[9]In addressing Mr. Spurlock's ineffective assistance claim, both the district court and the KCA applied the two pronged test from *State v. Orr*, 262 Kan. 312, 940 P.2d 42 (1997), which is taken directly from *Strickland*.  *Orr*, 262 Kan. at 317 (quoting *Strickland*, 466 U.S. 668 (1984)).  *See also Upchurch v. Bruce*, 333 F.3d 1158, 1164 n.4 (10th Cir. 2003)(stating that the Kansas standard for ineffective assistance of counsel claims "mirrors the *Strickland* standard").  Thus, the AEDPA deferential standard applies despite the failure to cite to Supreme Court precedent.  *See Payne v. McKune*, 280 F. Supp. 2d 1259, 1263 (D. Kan. 2003).

satisfy the prejudice prong of the *Strickland* test for ineffective assistance of counsel, a defendant must specifically show what beneficial evidence an 'adequate' investigation would have produced.")(citations omitted).  *See also Hatch v. Oklahoma*, 58 F.3d 1447, 1457 (10th Cir. 1995), *overruled on other grounds by Daniels v. United States*, 254 F.3d 1180, 1188 n.1 (10th Cir. 2001)("[P]etitioner does not state what exculpatory evidence an adequate investigation would have discovered or how this evidence would have affected the outcome of the innocence/guilt phase of the trial.  Thus, even if counsel's pretrial investigation were constitutionally deficient, petitioner has not demonstrated any resulting prejudice.")

Accordingly, the court concludes that the KCA's determination that the district court did not abuse its discretion in finding that Mr. Spurlock did not receive ineffective assistance of counsel was not contrary to nor an unreasonable application of federal constitutional law.  Mr. Spurlock is not entitled to federal habeas relief on this claim.

Mr. Spurlock raised his second argument, that Mr. Loeffler failed to object to and appropriately cross-examine the testimony of the KBI computer experts, in his § 60-1507 motion but the district court did not address it.  Nevertheless, the court rejects this argument on the merits under the prejudice prong of *Strickland*.  Mr. Spurlock apparently argues that had Mr. Loeffler been more familiar with computer technology, he could have established through cross-examination that Mr. Spurlock unknowingly obtained the pornographic images that were found on his computer because of a process known as spawning.  The court is not persuaded, however, that this argument indicates prejudice that Mr. Spurlock suffered due to Mr. Loeffler's representation.  This case did not involve pornography charges; thus, how the pictures got on Mr.

Spurlock's computer, whether intentionally or accidentally, is not relevant. Rather, the court finds that the mere fact that the pictures were found on the computer corroborated K.B.'s testimony. Therefore, because no degree of cross-examination by Mr. Loeffler would have changed the fact that the pictures were found on Mr. Spurlock's computer, the court concludes that Mr. Spurlock has failed to show that, but for Mr. Loeffler's alleged errors regarding the computer experts' testimony, the outcome of the trial would have been different, particularly in light of all the other evidence against Mr. Spurlock that was presented at his trial. *See Strickland*, 466 U.S. at 669 ("[A] court hearing an ineffective assistance claim must consider the totality of the evidence before the judge or jury."). Thus, the court concludes that Mr. Spurlock has failed to prove his ineffective assistance of counsel claim under *Strickland* and he is not entitled to federal habeas relief with respect to this issue.

## IV.   Conclusion

For all of the above reasons, the court finds that Mr. Spurlock is not entitled to habeas relief and his petition is therefore denied.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Mr. Spurlock's habeas petition

(Doc. #1) is denied.

       **IT IS SO ORDERED.**


Dated this 27th  day of June, 2007.


                        s/ John W. Lungstrum
                        John W. Lungstrum
                        United States District Judge